UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| RALPH STEPHENS BAZE, JR., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3: 08-54-DCR |
| ) | |
| V. ) | |
| ) | |
| KENTUCKY DEPARTMENT OF ) | **MEMORANDUM OPINION** |
| CORRECTIONS, et al., ) | **AND ORDER** |
| ) | |
| Defendants. | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court for screening of Plaintiff Ralph Stephens Baze, Jr.'s ("Baze") complaint filed pursuant to 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915A. Baze has been sentenced to death and is confined at the Kentucky State Penitentiary ("KSP") in Eddyville, Kentucky. He alleges that Defendant Lisa Lamb, Director of Communications for the Kentucky Department of Correction ("KDOC"), violated his right to free speech when she refused to let him speak about alleged prisoner abuse during a television interview. Additionally, Baze alleges that Defendants John D. Rees, Tom Simpson, Alan Brown and the KDOC violated his due process and equal protection rights by covering up Lamb's actions when he filed a grievance about this matter.[1]  [Record No. 2]

After reviewing the facts and relevant authorities, the Court will dismiss all federal and state claims seeking monetary damages asserted against all Defendants, as well as all federal

---

1.    John D. Reese is the commissioner of the KDOC. Tom Simpson is the warden at the KSP. Alan Brown is the deputy warden for programs at the KSP.

claims seeking injunctive or declaratory relief asserted against KDOC. Summons shall be issued for the remaining claims.

    **I.**    **RELEVANT FACTS**

Baze was one of two petitioners in a high-profile appeal regarding the constitutionality of lethal injection decided by the United States Supreme Court in April 2008.[2] Prior to oral arguments, FOXNews Channel correspondent Steven Brown came to the KSP to interview Baze about his case. The interview took place in the KSP inmate activity room with Defendants Lisa Lamb and Alan Brown present.

During the interview Steven Brown commented that there were some people who felt that Baze should suffer when put to death. Baze responded that living in prison was suffering, and then proceeded to give some examples of abuse inmates allegedly suffer at the KSP. At this point, Baze alleges that Lamb stood up and threatened to stop the interview because the topic was supposed to be about lethal injection, not prisoner abuse. Baze contends that the interview proceeded for another 35 to 40 minutes, and although the remainder of the interview dealt primarily with his allegations of judicial, prosecutorial, and police misconduct that he claims led to his false imprisonment, Lamb did not attempt to stop the interview for getting off the topic of lethal injection.

Two days later, Baze filed a grievance against Lamb contending that she violated his right to free speech under both the United States and Kentucky constitutions, because she refused to

---

2. *Baze v. Rees*, 128 S. Ct. 1520 (2008).

let him speak about prisoner abuse during his interview.[3]  Upon review of Baze's grievance and the Informal Resolution Response submitted by Defendant Alan Brown, the Grievance Committee sided with Brown.  This decision was upheld on initial appeal to Defendant Simpson, and on the subsequent appeal to Defendant Rees.

On July 15, 2008, Baze filed this complaint pursuant to 42 U.S.C. § 1983.  Baze seeks a declaration that the Defendants violated his rights, injunctive relief in the form of the KDOC permitting interviews to continue with liberal conditions,[4] and compensatory and punitive damages.

## II.     STANDARD OF REVIEW

Pursuant to the Prison Litigation Reform Act, this Court must screen Baze's complaint pursuant 28 U.S.C. § 1915A.[5]  *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1998) (overruled on other grounds).  Initial screening is intended to identify and dismiss complaints that are "frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief."  28 U.S.C. §

---

3. Although not clearly articulated, it appears Baze is asserting that Lamb's actions amount to unconstitutional viewpoint discrimination because she threatened to stop the interview when the topic of prisoner abuse was discussed, but let the interview get off topic in other areas.

4. This includes allowing face-to-face interviews to continue as they have in the past, except that Baze shall be unhindered by handcuffs, chains, etc.

5. After the initial screening under § 1915A, the complaint is screened under § 1915(e)(2) to examine parts of the complaint that were not initially examined.  *See McGore*, 114 F.3d at 608.  However, since the entire complaint will be addressed under the initial screening, subsequent screening is unnecessary.

1915A(b); *Gritner v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). This screening must be done before a prisoner can proceed in due course with his complaint.[6] *McGore*, 114 F.3d at 608.

Baze is proceeding *pro se*, so his pleadings are held to a less stringent standard than those prepared by an attorney. *See Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (*citing Haines v. Kerner*, 404 U.S. 519 (1972)). Additionally, during the screening process, a *pro se* litigant's allegations are taken as true. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

### III. ANALYSIS

#### A. Federal Claims Under § 1983 (Official Capacity)[7]

##### 1. Claims for Monetary Damages

Generally, § 1983 provides litigants with a federal forum to remedy many deprivations of civil liberties. *Will v. Mich Dep't of State Police*, 491 U.S. 58, 66 (1989). However, state entities possess Eleventh Amendment sovereign immunity and, absent wavier of this immunity, they may not be held liable for damages under § 1983. *Id.* As an arm of the state, KDOC is entitled to sovereign immunity. *See Graff v. Pollock*, 2008 U.S. Dist. LEXIS 59828, *4–5 (W.D. Ky. Aug. 4, 2008). Likewise, employees of the KDOC sued in their official capacities are entitled to the same Eleventh Amendment protection from federal claims. *See Will,* 491 U.S. at

---

6. Baze's motion to proceed *in forma pauperis* was granted previously. [Record No. 4]

7. Baze's complaint does not designate the capacity in which he is suing the Defendants. Since there is no indication that the Defendants have sufficient notice that they may be liable in their individual capacities, the complaint shall be deemed to only assert official capacity claims. *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989) ("because the Eleventh Amendment places a jurisdictional limit on federal courts in civil rights cases against states and state employees, we understand [Fed. R. Civ. P.] Rule 9(a) to *require* plaintiffs to properly allege capacity in their complaint"). *Cf Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) ("while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the course of the proceedings otherwise indicates that the defendant received sufficient notice").

71; *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (state employees sued in their official capacities cannot be held liable for money damages under § 1983).

The KDOC has not waived its sovereign immunity for claims such as those asserted by Baze. Accordingly, the federal claims seeking monetary damages asserted against Defendants KDOC and Lisa Lamb, Alan Brown, John Rees, and Tom Simpson shall be dismissed.

### 2.   Claims for Injunctive or Declaratory Relief

The Eleventh Amendment bars suits for injunctive or declaratory relief asserted against states and their agencies. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100–01 (1984). Accordingly, these federal claims asserted against Defendant KDOC shall also be dismissed. However, the Eleventh Amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief. *Thiokol Corp. v. Mich. Dep't of Treas.*, 987 F.2d 376, 381 (6th Cir. 1993). Baze's federal claims for injunctive or declaratory relief are not clearly frivolous or malicious on their face, and they state a claim for which relief could be granted. Therefore, summons shall be issued for these claims asserted against Defendants Lisa Lamb, Alan Brown, John Rees and Tom Simpson.

### B.   State Law Claims (Official Capacity)[8]

When a plaintiff pleads violations of the U. S. Constitution and the district court has jurisdiction over the federal claims under 42 U.S.C. § 1983, a district court has supplemental jurisdiction to address additional state law claims related to the federal claims. 28 U.S.C. §

---

8.   *Supra*, note 7.

1367; *Voyticky v. Timberlake*, 412 F.3d 669, 675 (6th Cir. 2005). Thus, this Court has jurisdiction over Baze's state law claims.

### 1. Claims for Monetary Damages

Under Kentucky law, state agencies possess governmental immunity from suit when an action is premised on the agency's performance of a governmental (as opposed to a proprietary) function. *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). As the Supreme Court of Kentucky explained in *Yanero,* 65 S.W.3d at 517–519, governmental and sovereign immunity are separate and distinct concepts that have been used interchangeably in a number of Kentucky appellate decisions.

> "Governmental immunity" is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency. . . . The premise is that courts should not be called upon to pass judgment on policy decisions made by members of coordinate branches of government in the context of tort actions, because such actions furnish an inadequate crucible for testing the merits of social, political, or economy policy. . . . Thus, a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary function.

*Yanero*, 65 S.W.3d at 519 (citations omitted).

In addition, a suit against a governmental employee in his official capacity is the same as a suit against the government agency for which the employee works. *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997) (citations omitted). This is because a victory in such an official capacity suit imposes liability not on the employee, but on the government agency itself. *Id.* Accordingly, under Kentucky law, governmental immunity extends to employees acting in their official capacities. *Yanero*, 65 S.W.3d at 521–22. *See also*, *Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky. 2007) ("If a state agency is deemed to have governmental

immunity, its officers or employees have official immunity when they are sued in their official or representative capacity.").

In addition to the protections provided to state agencies and employees performing governmental functions, some employees are also entitled to "official immunity." Once again, the Supreme Court of Kentucky's opinion in *Yanero v. Davis, supra*, provides guidance in explaining this concept.

> "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed. *Salyer v. Patrick*, 874 F.2d. 374 (6th Cir. 1989). Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative [*i.e.*, official] capacity, in which event his/her actions are included under the umbrella of sovereign immunity . . . . Similarly, when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled. . . .

*Yanero*, 65 S.W.3d at 521–22. *See also, Jones v. Lathram,* 150 S.W.3d 50, 53 (Ky. 2004).

As a state agency, the KDOC is cloaked with governmental immunity, and under Kentucky law, this immunity extends to employees of state agencies when they are sued in their official capacity. Accordingly, the state claims seeking monetary damages asserted against Defendants KDOC and Lisa Lamb, Alan Brown, John Rees, and Tom Simpson are dismissed.

### 2.   Claims for Injunctive or Declaratory Relief

In *Yanero*, the Supreme Court of Kentucky held that state agencies and their employees may possess governmental/official immunity from *tort* liability. *Yanero*, 65 S.W.3d at 519, 521–22. However, the opinion is silent on whether this immunity extends to claims for equitable relief. Based on what seems to be a purposeful omission in *Yanero*, coupled with the fact that

the Supreme Court of Kentucky did not discuss governmental immunity in a later case where a plaintiff sought equitable relief, it seems that the Supreme Court of Kentucky limited governmental/official immunity to claims seeking monetary damages. *See Young v. Hammond*, 139 S.W.3d 895 (Ky. 2004); *see also Roberts v. Fayette County Bd. of Educ.*, 173 S.W.3d 918, 923 (Ky. App. 2005). In addition, the state claims for injunctive or declaratory relief are not clearly frivolous or malicious on their face, and they state a claim for which relief could be granted. Therefore, summons shall be issued for these claims asserted against Defendants KDOC, Lisa Lamb, Alan Brown, John Rees, and Tom Simpson.

### IV. CONCLUSION

Based on the Court's screening of the complaint, it is **ORDERED** as follows:

(1) The following claims are **DISMISSED**, *sua sponte*, without prejudice: (a) all federal and state claims seeking monetary damages asserted against all Defendants; and (b) federal claims seeking injunctive or declaratory relief asserted against Defendant KDOC.

(2) The Clerk of the Court is directed to forward by certified mail, return receipt requested, one copy of the Complaint and this Memorandum Opinion and Order to the Office of the General Counsel for the Kentucky Department of Corrections, Frankfort, Kentucky. General Counsel shall have ten (10) days from the date of entry of this Order to complete and file a notice of waiver of service against any or all of the named Defendants.

If a wavier is not filed withing ten (10) days, the Clerk shall notify the Pro Se Office to prepare for service on the individual Defendants.

(3)     The Answer to the Complaint shall be filed no later than 60 days after the notice of waiver of service is filed.  However, if service on the individual Defendants is required, the Answer shall be filed no later than 20 days after service of summons.

(4)     The Plaintiff shall keep the Clerk of the Court informed of his current mailing address.  Failure to notify the Clerk of any address change may result in dismissal of this case.

(5)     For every further pleading or other document the Plaintiff wishes to submit for the Court's consideration, the Plaintiff shall serve upon each Defendant or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document.  The Plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each Defendant or counsel.  The Court will disregard any notice or motion which does not include this certification.

(6)     The Plaintiff must communicate with the Court solely through notices or motions filed with the Clerk's Office.  The Court will disregard correspondence sent directly to the Judge's chambers.

This 25th day of November, 2008.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge